IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| JERLEAN NWOKOCHA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 05 C 1240 |
| COUNTY OF COOK, | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Before the court is Defendant's Motion for Summary Judgment. (Dkt. No. 50). For the reasons stated below, the court grants Defendant's Motion for Summary Judgment in favor of Defendant in regards to Jerlean Nwokocha's retaliation claim, which is hereby dismissed with prejudice. The court denies Defendant's Motion for Summary Judgment in regards to Jerlean Nwokocha's breach of contract claim and relinquishes its supplemental jurisdiction over the claim, dismissing the breach of contract claim without prejudice.

PROCEDURAL HISTORY

Previous to this lawsuit, in June, 2002, plaintiff Jerlean Nwokocha ("Nwokocha") filed a separate lawsuit against her employer, defendant John H. Stroger Hospital of Cook County ("Defendant" or "Hospital"), alleging that she had been discriminated against on the basis of her sex and a perceived disability, as well as in retaliation for opposing such discrimination. (*See* Dkt. No. 1; Case No. 02 C 4111). On June 24, 2003, after Nwokocha voluntarily dismissed her

1

sex discrimination claim, the two parties entered into a Settlement Agreement and the case was dismissed with prejudice on July 17, 2003. (Dkt. No. 20; Case No. 02 C 4111).

In the case before this court, Nwokocha alleges that Defendant subjected her "to a pattern of disparate treatment, harassment, and discipline" in retaliation for the claims alleged in her earlier lawsuit, and that Defendant also breached the Settlement Agreement that had been reached in the earlier case. (First Am. Compl. ¶¶ 25, 27; Case No. 05 C 1240).

## LEGAL STANDARDS

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007). However, a party bearing the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The evidence relied upon must be competent evidence of a type otherwise admissible at trial, including affidavits based upon personal knowledge. *Juarez v. Menard, Inc.*, 366 F.3d 479, 484 n.4 (7th Cir. 2004). Summary judgment will be granted in favor of the moving party if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322-23.

Nwokocha brings her retaliation claim under Title VII of the Civil Rights Act of 1964, which prohibits an employer from discriminating against an employee who has "opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Nwokocha may proceed with her retaliation claim under either the direct or indirect method of proof. *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007).

"Under the direct approach, the employee must show evidence that he engaged in a statutorily protected activity (such as bringing a Title VII claim) and as a result, suffered an adverse action." *Id.* A plaintiff in Nwokocha's position can either rely upon an admission of retaliatory motive or she can demonstrate "sufficient circumstantial evidence such that a jury could infer retaliation." *Phelan v. Cook County*, 463 F.3d 773, 788 (7th Cir. 2006); *see also Sylvester v. SOS Children's Vill. of Ill.*, 453 F.3d 900, 902-03 (7th Cir. 2006). In this case, Nwokocha relies upon the "convincing mosaic" approach of circumstantial evidence. *Sylvester*, 453 F.3d at 903. Nwokocha makes no attempt to engage in the indirect method of proof.[1]

## BACKGROUND

It is not disputed that Nwokocha engaged in a statutorily protected activity when she filed her original complaint in case number 02 C 4111. At issue in this case is whether Defendant

---

[1] To establish a *prima facie* case of retaliation using the indirect method of proof, a plaintiff must demonstrate that "(1) after lodging a complaint about discrimination, (2) only she, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) she was performing her job in a satisfactory manner." *Treadwell v. Office of Ill. Secretary of State*, 455 F.3d 778, 782 (7th Cir. 2006) (quoting *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 642 (7th Cir. 2002)).

subjected Nwokocha to any adverse employment actions because of Nwokocha's attempt to enforce her Title VII rights in the earlier case. By way of background, the parties do not dispute that they entered into the following terms as part of their Settlement Agreement:

> 2. Pursuant to the terms and conditions of this Agreement, Jerlean Nwokocha, shall be transferred from the Emergency Room Unit to the Endoscopy Nursing Unit at John H. Stroger Hospital of Cook County. Said transfer is subject to the terms and conditions list below:
>
>> a. Jerlean Nwokocha is currently employed by Cook County as a CN2 nurse (charge nurse 2) in the Emergency Room department of John H. Stroger Hospital of Cook County. It is understood, by and between the parties, that upon execution of this Agreement, Jerlean Nwokocha shall be transferred from the Emergency Room Unit to the Endoscopy Unit at the John H. Stroger Hospital of Cook County.
>>
>> b. It is understood, by and between the parties, that pursuant to the transfer that is the subject of this Agreement, that Ms. Nwokocha shall be assigned as a CN2 in the Endoscopy Unit. That pursuant to her duties, her work shift shall be a flex time schedule with her work shift taking place between the hours of 7 a.m. to 6 p.m.
>>
>> c. That as part of her transfer to the Endoscopy Unity, Ms. Nwokocha shall share the duties of CN2 with two other CN2's. All three (3) CN2's, inclusive of Ms. Nwokocha, shall rotate their duties between each other in two (2) week blocks with each CN2 serving as the lead CN2 during every third block to which they are assigned the lead CN2.
>>
>> d. That during the time period Ms. Nwokocha is not serving as the lead CN2, she will be assigned, per the discretion of the Nurse Coordinator, or in the absence of the Nurse Coordinator by the lead CN2, to the position of team leader or to patient care responsibilities.
>
> 3. In consideration of the obligations set forth herein, Jerlean Nwokocha agrees to dismiss her complaint filed under docket number 02 C 4111 against the Defendants named in the lawsuit with prejudice and further agrees to be bound by the provisions set forth in this Agreement.

(Dkt. No. 52, Ex. A, 3).

Pursuant to the Settlement Agreement, Nwokocha was transferred to the Endoscopy and Bronchoscopy Unit (the "Unit")[2] in early- to mid-July, 2003. However, Nwokocha did not immediately assume the responsibilities of a CN2. Rather, Nwokocha embarked upon a nine-month training endeavor that ended when Nwokocha left her employment due to medical needs.[3] The parties agree that Nwokocha never completed her training in Endoscopy and Bronchoscopy. Although Nwokocha did not perform the duties of a CN2 in her new position, Nwokocha was paid as a CN2 throughout the training period.

## LEGAL ANALYSIS

The first question to be addressed is whether Nwokocha experienced any adverse employment actions at the hands of Defendant during the relevant time period. The Supreme Court has clarified that an adverse employment action in the context of a Title VII retaliation claim includes any action by the employer that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006) (quotations omitted). Adverse employment actions can include the reassignment of duties within the same job description, if the new duties are more arduous than other easier or more agreeable duties. *Id.* at 2416. However, the Supreme Court has cautioned that "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* at 2415.

---

[2] Nwokocha testified at her deposition that the Endoscopy Unit and the Bronchoscopy Unit merged prior to her transfer.

[3] Nwokocha was diagnosed with "delusional disorder, persecutory type." She never returned to work after March 31, 2004, and eventually tendered her resignation to Defendant on July 27, 2005. (Local rule 56.1 Statement of Facts in Support of Defendant's Motion for Summary Judgment ("SMF") ¶¶ 65, 67, 73).

Nwokocha argues that she experienced adverse employment actions in that she was reassigned to a position with significantly different job responsibilities (performing the duties of a CN1 "or below"), she was not allowed to perform CN2 duties or to share her duties with the other two CN2's, she was not allowed to serve as the lead CN2, and she was not assigned to be a team leader until March, 2004. (Dkt. No. 59 at 11).

Although Defendant states that Nwokocha "continued to perform the functions of a CN2," (Dkt. No. 51 at 9), Defendant cites no evidence in support of this assertion. When viewed in the light most favorable to Nwokocha, the court finds that the record supports Nwokocha's assertion that she was not performing the duties of a CN2 within the Endoscopy and Bronchoscopy Unit; rather, Nwokocha clearly seems to have been learning to perform the full duties of a CN1 and other staff for purposes of later supervising these individuals in her position as a CN2. This change in Nwokocha's duties could be considered an adverse employment action, if Nwokocha was able to demonstrate that it was the result of an attempt to retaliate against her for filing her original complaint. A reasonable employee would likely be dissuaded from filing a complaint against her employer if the penalty was reassignment to a position with less desirable job duties, and a reasonable jury could find from the record that the duties Nwokocha was assigned in the Unit (such as washing "scopes") were less desirable than those routinely performed by CN2s. However, it remains for Nwokocha to draw the causal connection between her duties in the Endoscopy and Bronchoscopy Unit and the filing of her original complaint.

In drafting the Settlement Agreement in case 02 C 4111, the parties failed to account for the need for an orientation period before Nwokocha could perform the duties of a CN2 in the

6

Unit. However, the parties do not dispute that Nwokocha was transferred from the Emergency Room to the Unit pursuant to the Settlement Agreement, that specialized training is required to work in Endoscopy and in Bronchoscopy, or that Nwokocha had not worked in either Endoscopy or Bronchoscopy before being assigned to the Unit in 2003. (SMF ¶¶ 8, 11-13). The parties also do not dispute that Nwokocha never finished her Endoscopy and Bronchoscopy training. (SMF ¶ 37). Viewing these undisputed facts together, the court finds that the reason Nwokocha was not allowed to perform any CN2 duties within the Unit is not disputed: Nwokocha did not perform CN2 duties because she was not qualified to do so.

Nwokocha argues that the "unending orientation period," coupled with management's lack of responsiveness to Nwokocha's "myriad complaints," creates a disputed question of fact as to whether Defendant "ever intended to afford Nwokocha with the tools and personnel necessary to impart a seven week orientation that was not a condition of settlement." (Dkt. No. 59 at 11-12). If Defendant purposefully hampered Nwokocha's necessary training or ignored her complaints in retaliation for filing her lawsuit, this could be considered an adverse employment action.

In support of her position that Defendant ignored her many complaints, Nwokocha refers the court to numerous letters of complaint that she addressed to various hospital personnel, such as Veronica Bather-West (Director of Nursing), Gregory Murphy (Divisional Director of Medicine), Lacy Thomas (Director of John H. Stroger Hospital of Cook County), Delores Holland (Nurse Coordinator), and Gethmus Lavender (Human Resources). (*See* Dkt. No. 61, Ex. 2). However, these letters are inadmissible hearsay and cannot be relied upon as evidence that Nwokocha experienced any of the "harassment" alleged therein. Fed. R. Evid. 801(c).

7

Similarly, Nwokocha fails to lay a proper foundation for the eight grievance forms she has attached to her response. Nwokocha, who is represented by counsel in this case, has made no attempt to authenticate any of these unsworn documents. They are not supported by deposition testimony, nor are they accompanied by affidavits. Because they are inadmissible hearsay evidence, the court will not consider these documents as part of the evidentiary record on summary judgment. *See Smith v. Potter*, 445 F.3d 1000, 1010 (7th Cir. 2006) (a party may not rely upon inadmissible hearsay to oppose a motion for summary judgment). Furthermore, Nwokocha cites no evidence at all in support of her assertion that "most of [these complaints] received no response," other than as alleged within the letters themselves. (Dkt. No 59 at 11).

Although Nwokocha argues that there is a disputed question whether "Defendant ever intended to afford Nwokocha with the tools and personnel necessary to impart a seven week orientation," there is sparse evidence in the record that Defendant withheld any "tools" that would have helped Nwokocha complete her orientation in a more timely manner. The parties agree that Nwokocha did not receive a Pysix code (for access to medicine) until July 30, 2003, and that she was forced to share a locker with another nurse until October, 2003. (SMF ¶¶ 39-40). However, the court is not persuaded that these deprivations caused Nwokocha's "unending orientation," which was still incomplete five months after Nwokocha was given her own locker and Pysix code.

Nwokocha directs the court to a December 3, 2003 letter from Defendant's counsel recognizing that, "for a variety of reasons which are listed below, [Nwokocha's] orientation has been slowed because of some factors that may be attributed to Ms. Nwokocha and some factors that may be attributed to the hospital." (Dkt. No. 61, Ex. 4). Specifically, Assistant State's

8

Attorney Steven Satter acknowledged that staffing shortages at the Hospital contributed to Nwokocha's prolonged training. *Id.* Despite Defendant's admission that the Hospital was partly at fault for Nwokocha's incomplete training as of early December, 2003, there is simply no evidence that the failure to provide proper staffing was intentional or otherwise motivated by a desire to retaliate against Nwokocha for filing her original lawsuit. A reasonable jury could not infer from this one statement that Defendant intended to delay Nwokocha's training indefinitely and intentionally engaged in a pattern of behavior to this end. Nwokocha herself admits that she was given weekly progress reports throughout her training, starting in July, 2003, and that she often agreed that she "needed more practice," "was not comfortable," and "needed more work" in many of the areas in which she had already been trained. (SMF ¶¶ 27, 29, 31, 34, 35, 36). As discussed above, the court finds that the reason for Nwokocha's "unending" orientation was because Nwokocha failed to master the necessary skills, not due to Defendant's retaliatory intentions.

Because the court finds no dispute of material fact as to Defendant's legitimate reasons for not allowing Nwokocha to perform the duties of a CN2 in the Endoscopy and Bronchoscopy Unit, and for requiring Nwokocha to participate in an ongoing training program within the Unit, the court grants summary judgment in favor of Defendant on Nwokocha's retaliation claim.

BREACH OF CONTRACT

As a general matter, the court disagrees with Defendant's position that this court lacks jurisdiction to enforce the Settlement Agreement simply because Judge Leinenweber dismissed Nwokocha's earlier case with prejudice. Nwokocha is not seeking to reinstate the federal jurisdiction that accompanied her original lawsuit; rather, she asserts that the court's

supplemental jurisdiction under 28 U.S.C. § 1367 grants the court subject matter jurisdiction over the breach of contract claim in this case. The court agrees.

However, having disposed of the claim that brought this case into federal court to begin with, the court now believes it is reasonable to decline to exercise the court's supplemental jurisdiction over Nwokocha's breach of contract claim. *See* 28 U.S.C. § 1367(c)(3); *see also CropLife America, Inc. v. City of Madison*, 432 F.3d 732, 733-34 (7th Cir. 2005) ("Ordinarily the district court would relinquish jurisdiction over supplemental state-law claims when as in this case all federal claims . . . were dismissed before trial."). For one thing, it appears that the parties originally contemplated this result when they signed the Settlement Agreement. (*See* Dkt. No. 52, Ex. A, 3 ¶ 9) ("It is further expressly understood that any breach of any of the terms of this Agreement by either party shall give rise to a cause of action in the injured party and further, that the breaching party agrees to subject himself or itself to the jurisdiction of the Circuit Court of Cook County for enforcement thereof."). Additionally, neither party has submitted any substantive argument to the court on the merits of Nwokocha's state law claim. Defendant's assertion that this claim is time-barred comes too late in the proceedings, as Defendant saved this argument for its reply brief, thus denying Nwokocha the opportunity to properly respond. The court denies Defendant's Motion for Summary Judgment as to the breach of contract claim and relinquishes its supplemental jurisdiction, dismissing the state law claim without prejudice.

## CONCLUSION

For the reasons stated above, the court grants Defendant's Motion for Summary Judgment in favor of Defendant on Nwokocha's retaliation claim, which is hereby dismissed

10

with prejudice. The court denies Defendant's Motion for Summary Judgment on Nwokocha's remaining state law claim, which is dismissed without prejudice pursuant to the court's relinquishment of its supplemental jurisdiction. Plaintiff, if she desires, may pursue her claim in state court.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 9, 2007